124 P.3d 335 (2005)
130 Wash.App. 622
STATE of Washington, Respondent,
v.
Charlie Bernnett DAY, Appellant.
No. 23192-5-III.
Court of Appeals of Washington, Division 3.
December 8, 2005.
*336 Dennis W. Morgan, Attorney at Law, Ritzville, WA, for Appellant.
Tamara A. Taylor, Benton County Prosecutor's Office, Kennewick, WA, for Respondent.
SCHULTHEIS, J.
¶ 1 Charlie Day and his wife were parked in a Benton County public access area. An officer who investigated to see if they had a proper parking permit observed an open handgun case near Mr. Day's feet. The officer conducted a limited search of the vehicle to find the handgun, which turned out to be stolen. Mr. Day was arrested and the search of the vehicle incident to the arrest uncovered evidence he was involved in manufacturing methamphetamine.
¶ 2 On appeal from his conviction of manufacturing methamphetamine, former RCW 69.50.401(a)(1) (1998), he contends the trial court erred in denying his motion to suppress evidence discovered during the warrantless *337 search of his vehicle. Because we conclude that the search was justified for officer safety during the investigation of a traffic infraction, we affirm.

FACTS
¶ 3 In late March 2003, Deputy Jeff Hayter noticed a vehicle backed into shrubbery under a tree in a public access area along the Yakima River. Deputy Hayter knew that migrant workers formerly camped in that area before it was designated public access. He also knew that vehicles parked in that area were required to have a permit tag attached to their rear bumper. The deputy approached the vehicle on foot to determine whether it had a proper permit and whether it was being used as a home for migrant workers.
¶ 4 As Deputy Hayter approached, he saw that the vehicle was occupied with a man in the driver's seat and a woman in the front passenger seat. The vehicle was cluttered with garbage, including cigarette lighters and rubber gloves. While talking with the couple, who identified themselves as Charlie and Alice Day, Deputy Hayter noticed an empty handgun case on the floor of the car near Mr. Day's feet. The deputy asked Mr. Day if there was a gun in the car. When Mr. Day answered yes, Deputy Hayter asked him to step out of the car, patted him down, and handcuffed him. Mr. Day said the gun was under the passenger seat. Consequently, the deputy also asked Ms. Day to step out of the car, patted her down, and handcuffed her. He told the couple they were not under arrest.
¶ 5 By this time, another officer had arrived. Deputy Hayter searched under the passenger seat, but eventually found the handgun  a .45-caliber Glock  under the driver's seat. Dispatch reported that the handgun was stolen and that Ms. Day had a felony warrant for her arrest. Mr. and Ms. Day were arrested. The subsequent search of the vehicle incident to their arrest uncovered substantial evidence of the manufacture of methamphetamine.
¶ 6 Mr. Day was charged with one count of manufacturing a controlled substance, former RCW 69.50.401(a)(1).[1] His pretrial motion to suppress the evidence obtained during the pre-arrest warrantless search of the vehicle was denied and he was convicted on stipulated facts in a bench trial.

WARRANTLESS SEARCH INCIDENT TO A CIVIL INFRACTION
¶ 7 Mr. Day asserts that, because Deputy Hayter was investigating a civil natural resource infraction rather than a traffic infraction, the deputy was not justified in detaining him and his wife and searching the vehicle for the handgun. He contends the deputy was not authorized to conduct a Terry investigation under the circumstances of a nontraffic violation. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Because he assigns error solely to the trial court's conclusions of law in the suppression order, our review is de novo. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999).
¶ 8 Generally, warrantless searches and seizures are unreasonable and violate the Fourth Amendment and article I, section 7 of the Washington State Constitution. State v. Duncan, 146 Wash.2d 166, 171, 43 P.3d 513 (2002). Courts recognize a few carefully drawn exceptions to the warrant requirement, including consent, exigent circumstances, inventory searches, plain view searches, searches incident to arrest, and Terry investigative stops. Id. at 171-72, 43 P.3d 513. A Terry stop is a brief detention based on an officer's reasonable suspicion of criminal activity. Terry, 392 U.S. at 20-27, 88 S.Ct. 1868. If the initial stop is justified, the officer may make a limited search for weapons if he or she reasonably believes that his or her safety or the safety of others is endangered. Duncan, 146 Wash.2d at 172, 43 P.3d 513. To justify the initial stop for Terry purposes, the State must show that the officer had a reasonable, articulable suspicion, based on objective facts, that the person *338 stopped had committed or was about to commit a crime. Terry, 392 U.S. at 21, 88 S.Ct. 1868; Duncan, 146 Wash.2d at 172, 43 P.3d 513.
¶ 9 Mr. Day was not stopped because he was suspected of committing a crime. As he notes, certain civil infractions, such as the one investigated by Deputy Hayter here, have been decriminalized. See RCW 7.84.020 (a natural resource infraction is not a criminal offense); RCW 46.63.020 (a traffic infraction may not be classified as a criminal offense, subject to enumerated exceptions). Although the courts have extended application of the Terry stop exception to traffic infractions, Duncan declined to extend the exception to include all civil infractions. Duncan, 146 Wash.2d at 174, 43 P.3d 513. Mr. Day contends parking without a permit in a public access area is a civil infraction that does not justify a Terry stop.
¶ 10 With a civil infraction, an officer may briefly detain a person only long enough to check his or her identification and to issue the notice. Id. at 174, 43 P.3d 513 (citing RCW 7.80.060). Traffic infractions, due in part to the ready mobility of vehicles and safety concerns, justify a broader scope of detention. Id. The person may be detained for the reasonable period of time required to identify him or her, check for outstanding warrants, check his or her license, insurance card, and vehicle registration, and complete the notice of the traffic infraction. Id. at 174-75, 43 P.3d 513 (citing RCW 46.61.021(2)). A nontraffic civil infraction that did not occur in the presence of the officer does not justify a Terry investigative detention. Id. at 182, 43 P.3d 513.
¶ 11 The questions before this court are first, whether this civil parking violation constituted a traffic infraction; and second, whether additional circumstances justified the search for the handgun.
¶ 12 Both parties agree that the authorization for Mr. Day's parking infraction is under chapter 7.84 RCW, which describes the procedure for issuing infraction notices for violations of the natural resource laws. The administrative rule adopted pursuant to this statute provides that no vehicle shall be parked in a state park area without an appropriate permit or purpose. WAC 352-20-010. According to the general statute on natural resources, chapter 43.30 RCW, a violation of a rule pertaining to the use by the public of state-owned lands is an infraction under chapter 7.84 RCW. Former RCW 43.30.310 (1987) (recodified as RCW 43.12.065 by LAWS OF 2003, ch. 334, § 128). Specifically, "violation of a rule relating to traffic including parking, standing, stopping, and pedestrian offenses is a traffic infraction." Former RCW 43.30.310. Under the clear terms of the statutes relating to civil natural resource violations, parking in violation of the rules for use of state-owned land is a traffic infraction.
¶ 13 As noted above, a brief Terry investigative stop is justified by a reasonable suspicion of a traffic infraction. Duncan, 146 Wash.2d at 174, 43 P.3d 513. During such a stop, an officer may make a limited search for weapons if he or she reasonably believes the search is necessary for officer safety. Id. at 172, 43 P.3d 513. Here, the findings indicate that Mr. Day acted as though he were looking for something as Deputy Hayter approached. The deputy then noticed an open handgun case on the floor at Mr. Day's feet. When asked, Mr. Day said that there was a gun in the car behind the passenger seat. These facts support the deputy's reasonable safety concerns. As noted in State v. Kennedy, 107 Wash.2d 1, 12, 726 P.2d 445 (1986), the scope of a search during a Terry stop based on a traffic infraction should be limited to the extent sufficient to assure the officer's safety:
This means that the officer may search for weapons within the investigatee's immediate control. We also recognize that such a limited search applies to any companion in the car because that person presents a similar danger to the approaching officer. The front seat of the car is in the immediate control of a passenger seated next to the driver. Consequently, a search in that area to discover whether the suspect's furtive gesture hid a weapon under the front seat is similar to a Terry frisk where an officer may frisk a suspect to protect himself from danger.
*339 ¶ 14 Given Deputy Hayter's objectively reasonable concerns for his safety, his limited search for the handgun under the passenger seat (where Mr. Day said it was), and under the driver's seat was reasonable. "It would be unreasonable to limit an officer's ability to assure his own safety." Id. Because the seizure of the handgun was lawful, Mr. Day's arrest for possession of the stolen gun was justified,[2] as was the search of the vehicle incident to that arrest. The trial court did not err in denying his motion to suppress the evidence of methamphetamine manufacture that was revealed during that search.
¶ 15 Affirmed.
WE CONCUR: KATO, C.J., and THOMPSON, J. Pro Tem.
NOTES
[1] An amended information additionally charging possession of a stolen firearm was withdrawn by the State before trial.
[2] Apparently Mr. Day admitted that he had possession of the handgun.